**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AIA KOSTIN**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 21-850-KSM** |
| **BUCKS COMMUNITY COLLEGE (NURSING DEPARTMENT), et al.**, | |
| Defendants. | |

**MEMORANDUM**

MARSTON, J.                                                                                  **March 30, 2022**

*Pro se* Plaintiff Aia Kostin sues Defendants Bucks County Community College ("BCCC"), and two BCCC employees, Dr. Constance Corrigan (Dean of BCCC's Department of Health Sciences) and Mary Dura (a professor in BCCC's Nursing Department) (collectively, "Defendants"), after Defendants dismissed her from BCCC's Nursing Program.  (Doc. No. 9.) Ms. Kostin brings claims for negligence, intentional infliction of emotional distress ("IIED"), and breach of contract under state law.  (*Id.*)  She also alleges that Defendants violated her constitutional rights, asserting procedural and substantive due process claims, a freedom of speech retaliation claim, and an equal protection claim.  (*Id.*)

Defendants filed a motion to dismiss, arguing that this Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Ms. Kostin fails to state any claim arising under federal law.  (Doc. No. 11.)  In the alternative, Defendants contend that Ms. Kostin's state law claims are barred by the statute of limitations, that Ms. Kostin failed to exhaust her administrative remedies, and that Defendants have governmental immunity under the

Pennsylvania Political Subdivision Tort Claims Act ("PSTCA").  (*Id.*)  Ms. Kostin opposes the motion. (Doc. No. 12.)

For the reasons discussed below, the Court grants in part and denies in part the motion.

## I.   Factual Background

Accepting all of Ms. Kostin's allegations as true, the relevant facts are as follows.

### A.   *Ms. Kostin Struggles to Enroll in BCCC's Nursing Program*

In the fall of 2009, Ms. Kostin enrolled in BCCC.  (Doc. No. 9 at ¶ 6.)  Although Ms. Kostin had earned college credits at other educational institutions, she had to retake certain prerequisite courses to be eligible for BCCC's Nursing Program requirements.  (*Id.*)  Her "Nursing Program Application was denied for several years with no legitimate reason for the denials," despite the fact that she had completed all the prerequisites before applying to the program.  (*Id.* at ¶¶ 7–11.)  Ms. Kostin's inquiries about why her application was denied went unanswered.  (*Id.*)  After these denials, Ms. Kostin explained to the Nursing Program in 2017 that she did not need to stay enrolled at BCCC, as she had taken all the required classes; in response, she was told "to take yoga" and stay enrolled in the school, as it was prerequisite to apply for the Nursing Program, and that she should apply again for the Nursing Program the following year.  (*Id.* at ¶¶ 11–12.)

Ms. Kostin spoke to the then-head of the BCCC Nursing Program, Professor Keane, about her financial situation and her need for a nursing degree.  (*Id.* at ¶ 13.)  "Professor Keane told [Ms. Kostin] that she [could] do anything else, but NOT nursing."  (*Id.* at ¶ 14.)  Dissatisfied with this response, Ms. Kostin contacted the President of BCCC's office to question the denial of her nursing application.  (*Id.* at ¶ 15.)  After escalating the matter to the President's Office, Ms. Kostin was admitted to the BCCC Nursing Program at some point in 2017.  (*Id.* at ¶ 16; *see also id.* at ¶ 17 ("It took Plaintiff eight (8) years of course work and involvement by the President's

Office to get accepted to the BCCC Nursing Program.").)

### B.     *Ms. Kostin Has a Negative Experience During a Clinical in Her Final Semester*

In 2019, Ms. Kostin started Level 4 of the BCCC Nursing Program, which was the final semester of the two-year nursing degree program.  (*Id.* at ¶¶ 18, 20.)  February 13 was Ms. Kostin's second day in clinicals, and Professor Dura was the clinical instructor.  (*Id.* at ¶ 20.)  That day, Ms. Kostin was responsible for taking care of two patients, Patient A and Patient B.  (*Id.* at ¶ 21.)  Ms. Kostin "gave bed baths to both patients [and] assisted with all activities including personal hygiene, bedsheet replacement, feeding, etc."  (*Id.*; *see also id.* at ¶ 24 (explaining that "Patient B . . . required full assistance" and that she "changed patient B's diaper, gown, bedsheets twice that contained fecal matter").)

Although Ms. Kostin bathed Patient A on two occasions, Patient A refused to have his diaper changed.  (*Id.* at ¶¶ 21, 23, 40.)  According to Ms. Kostin, she confirmed that Patient A's diaper was not soiled and then informed Professor Dura that Patient A requested that his diaper change be postponed.  (*Id.* at ¶¶ 21–23, 40.)  Ms. Kostin believed that changing Patient A's diaper against his wishes would constitute a violation of his rights, and she communicated this position to Professor Dura.  (*Id.* at ¶ 22; *see also id.* at ¶ 39 (citing to the Pennsylvania Patient Bill of Rights, 28 Pa. Code § 103.22); *id.* at ¶ 40 ("The Patient made it clear to Plaintiff that he didn't want to get his diaper changed at the moment . . . The plaintiff reported to instructor Dura and made it clear that she will not force herself on a patient against his will").)

At the end of the day, Ms. Kostin turned in her nursing notes.[1]  (*Id.* at ¶ 24.)

---

[1] On February 25 and 26—after Ms. Kostin was dismissed from BCCC's Nursing Program, as discussed *infra*—Kostin requested her graded nursing notes.  (Doc. No. 9 at ¶¶ 24, 49; Doc. No. 9-2 at 3–4 (Exs. 3A, 3B), 20–21 (Exs. 17A, 17B).)  On February 26, Dr. Corrigan responded, "I checked with Ms. Dura and she says that you did not turn in your nursing note[s] for grading."  (Doc. No. 9-2 at 5 (Ex. 3C), 22 (Ex. 17C).)  Kostin alleges that Defendants intentionally concealed her nursing notes.  (*Id.* at ¶¶ 25, 50.)

Four days later, on February 17, Ms. Kostin contacted the BCCC Nursing Department about the negative encounters she had with Professor Dura during the February 13 clinical.[2]  (*Id.* at ¶ 25.)  She also requested to be placed with a different instructor for the remaining four days of clinicals.  (*Id.*; *see also* Doc. No. 1-1 at 8 ("I am asking the Nursing Department to address this matter immediately and place me with a different instructor at a different hospital for the remainder of the hospital clinicals.").)  On February 19, she followed up, requesting an update, as she had another clinical scheduled for the following day, an upcoming exam, and had not yet received a response.  (*See* Doc. No. 9-2 at 6 (Ex. 4) ("This is my third email to you.  As you know this is a serious matter for me especially given that I have a clinical coming up tomorrow, February 20th and an exam on Feb 25th.").)

### C.     Ms. Kostin Is Dismissed from BCCC's Nursing Program

The next day, February 20, Dr. Corrigan reached out to Ms. Kostin to schedule a meeting for the following day to discuss Ms. Kostin's "letter and clinical experiences."  (Doc. No. 9 at ¶ 26; Doc. No. 9-2 at 7 (Ex. 5).)  On February 21, Ms. Kostin, Ms. Kostin's mother,[3] Dr. Corrigan, and other Nursing Program instructors (Professors Murt and Robbins) attended the meeting. (Doc. No. 9 at ¶¶ 27–29.)  During the meeting, Ms. Kostin's concerns "were not addressed at all," and "there was no opportunity for [her] to describe what happened [during the February 13 clinical], or present her side of the story."  (*Id.* at ¶ 30.)  Rather, Dr. Corrigan informed Ms.

---

[2] Ms. Kostin did not attach this email to her amended complaint.  (*See generally* Doc. Nos. 9, 9-2, 9-3.) The Court notes that Ms. Kostin attached an undated letter to her initial complaint addressed to Professor Robbins which included a number of details regarding her negative encounters with Professor Dura, including related to the clinical on February 13.  (*See* Doc. No. 1-1 at 1–8.)  The Court is uncertain if this letter is the same as the email referenced by Ms. Kostin in her amended complaint.

[3] Ms. Kostin alleges that Dr. Corrigan attempted to prevent Ms. Kostin's mother from attending the meeting, by warning the mother that "she had a number of disparaging things to say about [Ms. Kostin] that might be upsetting to [the] mother."  (Doc. No. 9 at ¶¶ 27–29.)

Kostin that she "did not like the tone of [Ms. Kostin's] letter" and handed Ms. Kostin a pre-written Letter of Dismissal, dismissing Ms. Kostin from the Nursing Program.  (*Id.* at ¶¶ 31–32; *see also* Doc. No. 9-2 at 8–9 (Exs. 6A, 6B).)  During the meeting, Dr. Corrigan also referenced an incident report allegedly on file at the hospital, but according to Ms. Kostin, no such report exists.  (Doc. No. 9 at ¶¶ 58–59.)[4]

In the dismissal letter, Dr. Corrigan stated that on February 13, Ms. Kostin received an unsatisfactory rating during her clinical with Professor Dura and explained that she "undertook an investigation" because Ms. Kostin claimed that Professor Dura "performed in a manner threatening to [Ms. Kostin] and in a discriminatory manner."  (Doc. No. 9-2 at 8–9 (Ex. 6A).)  After speaking with "[Ms. Kostin's] primary nurse" and other students under Professor Dura's supervision, Dr. Corrigan concluded that Ms. Kostin's claims were unfounded.  (*Id.* ("I cannot find any information that supports your claims.").)

Separately, after reviewing materials from Professor Dura and the primary nurse about the clinical on February 13, Dr. Corrigan concluded that Ms. Kostin had violated the Integrity Policy in the Nursing Student Handbook, "which prohibits lying and unprofessional behaviors."  (*Id.*)  Dr. Corrigan cited the Nursing Student Handbook, which states:

> V: Clinical: Students may not falsify or knowingly make incorrect entries in the patient's record or other related documents.[5]  This

---

[4] Ms. Kostin alleges that she asked to see the incident report but "was told that 'it's private information' that [could] not be shared with [her]."  (*Id.* at ¶ 58.)  When Ms. Kostin stated that she would ask the hospital for a copy of the incident report, Dr. Corrigan grew angry and told her, "You're not allowed to do that."  (*Id.*)  And, when Ms. Kostin and her mother drove to the hospital after the meeting to inquire about the incident report, "[t]he hospital staff verified that NO incident report exists."  (*Id.* at ¶ 59; *see also id.* (on May 18, 2021, the hospital again informed Ms. Kostin "that the incident report does NOT exist").)

[5] Ms. Kostin alleges that this provision does not apply to her—even though it was in the Nursing Student Handbook—because she is a student and because she did not have access to patient records.  (*See* Doc. No. 9 at ¶ 29 ("Plaintiff researched this statement and it was taken out of the Law 1.18 Standard of Nursing Conduct.  The Plaintiff contacted the Pennsylvania Code & Bulletin in Harrisburg Pa and verified that this LAW applied to registered nurses only, NOT students."); *see also id.* ("Plaintiff never entered incorrect information in patients [sic] records or other documents.  Student nurse [sic] cannot

standard of behavior applies to making verbal or written reports to an instructor that are not true, such as but not limited to reporting to an instructor a task is completed when it has not actually been accomplished, performing a task without Instructor approval, withholding patient information from the instructor, or using patient data for a paper from the past.

(*Id.*)  Dr. Corrigan concluded that Ms. Kostin's conduct on February 13 constituted a violation of this policy.  (*See id.*)  Dr. Corrigan elaborated:

Unfortunately, upon review of the material from Professor Dura and your primary nurse it has come to the department's attention that you performed in an unprofessional and unsafe manner.  Most specifically, you were to be caring for an incontinent patient and were to be ensuring the patient remained on dry bedding by changing the incontinence pads and adult diapers.  This was not done even though you reported to both your primary nurse and your professor that it was done.  The primary nurse found the patient in a pool of urine and it was clear that in the 6 hours you were caring for the patient (7 AM-1 PM)[6] you had not actually changed the incontinence materials.  This resulted in an incident report being filed with the hospital.  This is not the only instance that your instructor and the primary nurse were concerned with.

 (*Id.*)

Then, Dr. Corrigan explained that because Ms. Kostin had violated the Integrity Policy, she was "being dismissed from the nursing program."  (*Id.* at 9 (Ex. 6B).)  Ms. Kostin remained a BCCC student and was permitted to continue "to take any classes other than those in the nursing program." [7]  (*Id.*)  Dr. Corrigan informed Ms. Kostin that if she wanted to reattempt

---

enter information to patients [sic] records simply because student [sic] don't have access to it.").)

[6] As to this allegation in Dr. Corrigan's letter, Ms. Kostin writes:  "The patient had a hospital nurse that was supposed to perform her duties independent of the Plaintiff . . . Student's Hospital Staff **cannot** supervise a student; it is the responsibility of the clinical faculty member."  (Doc. No. 9 at ¶¶ 60–61; *see also id.* at ¶ 62 ("According to the allegation by the school the patient was sitting in a diaper full of urine from 7AM to 1PM—where was his hospital Nurse?  She never checked on her patient during the 6 hour time frame?  It is clearly stated in the rules that the hospital nurse is Not [sic] to supervise a student.").)

[7] At the time of her dismissal, Ms. Kostin had "achieved a **total of 132 College Credits** which is more than a Bachelor's Degree (12) credits, while the BCCC Associate Degree in Nursing Program only

Nursing Level 4, "the next offering [would be] January 2020." (*Id.*)  However, to enter the

January 2020 cohort, Ms. Kostin would have to successfully pass a readmission test covering

Nursing Level 3 course material, which would be offered in December 2019, and she would have

to repeat all of her background screens and other clinical paperwork.  (*Id.*)  In addition, Ms.

Kostin's Nursing Program requirements would have to reflect the new January 2020 start date.

(*Id.* ("Any courses that require a 'B' or which must be completed within 7 years of admission

must be in an academic progression state by the beginning of the Spring 2020 semester.").)

Last, Dr. Corrigan advised Ms. Kostin that she would "receive a formal disciplinary

action through [BCCC's] tracking system" and that if she wanted to challenge the dismissal, she

could contact the Associate Provost, Dr. Kelleway, to begin the grievance process.  (*Id.*)

### D.      Ms. Kostin Appeals Her Dismissal

Ms. Kostin appealed her dismissal, twice—first to the Provost and then to the President.

(*See* Doc. No. 9 at ¶ 52; Doc. No. 9-2 at 24 (Ex. 19A); Doc. No. 9-4 at 1 (Ex. 19B).)

As to Ms. Kostin's dismissal from the program, BCCC's Provost Lisa Angelo wrote: "[I]t

is my understanding that you had a problematic day.  In addition to other unsatisfactory

performances, the primary nurse informed Professor Dura that you did not perform a task even

though you reported that you had.  This type of infraction leaves you subject to dismissal."

(Doc. No. 9-2 at 14 (Ex. 19A).)  The Provost then cited to the the clinical provision of the

Nursing Student Handbook as the basis for Ms. Kostin's dismissal.  (*See id.* (citing the provision

that prohibits "falsify[ing] or knowingly mak[ing] incorrect entries in the patient's record or

other related documents").)  After concluding that she "d[id] not find anything to support unfair

treatment in the procedures followed," the Provost explained that Ms. Kostin could reapply to the

---

requires 67 Credits to graduate."  (Doc. No. 9 at ¶ 72.)

Nursing Level 4 program in the spring of 2020.  (*Id.*)  The Provost also outlined Ms. Kostin's other options—she could graduate with her associate's degree in Health Sciences without taking additional courses and/or file a tuition appeal for the money she spent on the Spring 2019 semester.  (*Id.* ("I understand your disappointment in the decision to dismiss but I do hope, after all you've invested, you will either take advantage of the degree availability [sic] or reapply to the program next spring.").)  And as to Ms. Kostin's complaint of mistreatment by Professor Dura, the Provost reiterated Dr. Corrigan's findings—namely, that Ms. Kostin's charge of bullying was not upheld, as the students and nurse interviewed "reported no incidents of bullying either to them nor did anyone observe bullying to you."  (*Id.*)

Ms. Kostin then appealed to the President of BCCC, Dr. Stephanie Shanblatt.  (*See* Doc. No. 9-4 at 1 (Ex. 19B).)  After "review[ing] all documentation provided by [Ms. Kostin] and college faculty and staff," the President upheld Ms. Kostin's dismissal from the Nursing Program.  (*Id.*)  The President told Ms. Kostin that the decision was based on "the fact that [she] lied regarding care [she] provided to a patient."  (*Id.*)  "The primary staff nurse informed Professor Dura that [Ms. Kostin] did not perform a task, even though [she] reported [she] had. This type of infraction is conduct subject to dismissal."  (*Id.* (citing the clinical provision of the Student Nursing Handbook).)  The President also upheld Ms. Kostin's dismissal because Ms. Kostin's conduct "violated accepted standards of patient care and was harmful to the patient," and "[her] failure to provide adequate care was detrimental to the relationship between [BCCC] and the clinical site."  (*Id.*)  As to Ms. Kostin's "complaint of threatening and unprofessional behavior on the part of" Professor Dura, the President found that the claim lacked merit.  (*Id.*)

### E.    *Defendants Failed to Follow the Appropriate Protocols*

Ms. Kostin alleges that Defendants failed to follow the appropriate protocols when investigating her complaint and dismissing her from the Nursing Program.  (Doc. No. 9 at ¶ 33.)

For example, Ms. Kostin claims that she should have been asked to leave her clinical on February 13 had her instructor and the primary nurse been unsatisfied with her performance. (*See id.* (citing the Nursing Student Handbook, "Criteria for Clinical Evaluation," which provides that "a student may be asked to leave the clinical area if they are not performing in a satisfactory/safe, competent, and caring manner, displaying inappropriate behavior or violating any nursing policy"); Doc. No. 9-2 at 10 (Ex. 7) (same); *see also* Doc. No. 9 at ¶ 35 ("On February 13, 2019 . . . Plaintiff completed the entire Clinical Day, Professor Dura never asked her to leave.  If Plaintiff's behavior was so outrageous and dangerous why didn't Professor Dura ask her to leave?").)  Ms. Kostin also asserts that she should have been given the opportunity to do remediation.  (Doc. No. 9 at ¶¶ 36, 47 (citing the Nursing Student Handbook, which provides that if a student is "dismissed from the clinical practice area for unsafe or unsatisfactory performance," "[t]he student must return to the college laboratory, during the scheduled time for remediation to practice that procedure(s), and demonstrate competence at the expected level"); Doc. No. 9-2 at 16 (Ex. 13); *see also* Doc. No. 9 at ¶ 48 ("Plaintiff was denied the opportunity to return to the college laboratory . . . for remediation. . . . The option of remediation was never even presented to Plaintiff.").)[8]

According to Ms. Kostin, her dismissal was also premature because she had not "demonstrate[d] a pattern of three unsafe/unsatisfactory occurrences."  (Doc. No. 9 at ¶ 33 (citing Nursing Student Handbook); *id.* at ¶¶ 34, 43; Doc. No. 9-2 at 11 (Ex. 8); *id.* at 12 (Ex. 9) (stating that a student who has "demonstrated a pattern of 3 unsafe/unsatisfactory occurrences . . . within a course may be dismissed from the program"); *id.* at 16 (Ex. 13); *see also* Doc. No. 9 at

---

[8] Ms. Kostin also claims that Defendants failed to follow the Academic Integrity Policy.  (*See* Doc. No. 9 at ¶¶ 65–69 (alleging that under that contrary to the policy, she never received a warning or an Academic Integrity Reporting Form).)

¶ 42 ("[T]he penalty for a Student Nurse for an infraction during a Clinical Day is to be asked to leave for the Day . . . The penalty for a single infraction like Plaintiff's is NOT to be dismissed from the Program.").)

Ms. Kostin also takes issue with how Defendants handled the grievance process as it pertained to her complaint about Professor Dura; she asserts that they deviated from the student grievance policy set forth in the Nursing Student Handbook. (Doc. No. 9 at ¶¶ 53–55.) The Associate Degree Nursing Student Grievance Policy provides, "The nursing student has a right to address an issue or concern if they perceive they have been evaluated or treated in an unfair manner." (Doc. No. 9-4 at 2–3 (Exs. 20, 21); *see also id.* ("A student grievance is described as an issue and/or concern by the student who feels they have not been evaluated according to stated criteria or feels they have been the object of inappropriate verbal of physical action by a member of the nursing program instructional staff.").) The policy also states that the nursing student should have "the opportunity to discuss their concerns with the involved faculty member within five (5) working days of the incident"; then, the Director of the Associate Degree Nursing program [shall] meet simultaneously with the faculty member and student to resolve the grievance"; if that process is unsuccessful, then "the student will meet with the faculty member, the Director [], and the Academic Dean of the Department"; and last, "if a resolution is unable to be accomplished, the student will be directed to the appropriate college wide committee or the Provost of Academic Affairs." (*Id.*; *see also* Doc. No. 9 at ¶ 54.) According to Ms. Kostin, "[n]one of these Protocols were followed in any substantive way." (Doc. No. 9 at ¶ 55.)

Given Defendants' failure to follow these procedures, Ms. Kostin claims that her dismissal from the Nursing Program was retaliatory—in other words, Defendants retaliated against her for asking to complete the remainder of her clinical days with a different instructor.

(*See* Doc. No. 9 at ¶ 44 ("According to the Handbook, Dismissal from the Nursing Program, even after three (3) unsatisfactory occurrences, is not mandatory, but optional.  In light of this Section, how does BCCC justify Plaintiff's Dismissal for a single 'unsatisfactory occurrence'? The College obviously retaliated against Plaintiff for the email she wrote on February 17, 2019, asking for an Instructor other than Professor Dura, for the remainder of her Clinical Rotation Days, essentially asking for help to be treated respectfully and complete the Program."); *see also id.* at ¶ 57 ("Rather than help Plaintiff, they punished her."); *id.* at ¶ 71 ("Rather than follow School Protocols, BCCC protected its staff, and punished Plaintiff in a severe way for complaining about Professor Dura.").)

## II.    Defendants' Motion to Dismiss

Defendants argue that Ms. Kostin's amended complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. First, Defendants contend that Ms. Kostin's federal claims, arising under § 1983 and the United States Constitution, are "immaterial and made solely for the purpose of obtaining jurisdiction, [and]/or [are] wholly insubstantial and frivolous."  (*See* Doc. No. 11 at 6 (citation omitted).) Accordingly, Defendants argue "the entire case should be dismissed as not involving any federal controversy, which deprives this Court of any subject matter jurisdiction." *Strader v. U.S. Bank Nat'l Ass'n*, Civil Action No. 2:17-cv-684, 2018 WL 741425, at *5 (W.D. Pa. Feb. 7, 2018)).) (*See* Doc. No. 11 at 6–8.)  Second, to the extent the amended complaint states a federal controversy, Defendants argue that the federal and state claims fail to state a claim under the Rule 12(b)(6) standard, that they are entitled to governmental immunity for Ms. Kostin's state law claims, that Ms. Kostin did not exhaust her administrative remedies as to her state law claims, and that Ms. Kostin's state law claims are time barred.  (Doc. No. 11.)  Ms. Kostin

opposes the motion.  (Doc. No. 12.)

## III.    Discussion

### A.    *Subject Matter Jurisdiction Under Rule 12(b)(1)*

#### 1.  Legal Standard

"Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Williams v. Litton Loan Servicing*, Civil Action No. 16-5301(ES)(JAD), 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018).  "The Court can adjudicate a dispute only if it has subject-matter jurisdiction to hear the asserted claims."  *Id.* (quotation marks omitted).

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir. 2000).  A facial attack "contests the sufficiency of the complaint because of a defect on its face," and the Court considers only the "allegations in the complaint, along with documents referenced therein, in the light most favorable to the nonmoving party."  *Williams*, 2018 WL 6600097, at *5 (quotation marks omitted); *see also Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (explaining that a "facial attack" "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law").  In contrast, a factual attack "concerns the actual failure of a plaintiff's claims to comport factually with jurisdictional prerequisites."  *Constitution Party of Pa.*, 757 F.3d at 358 (cleaned up); *see also id.* ("A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction.").

As a threshold matter, the Court must first determine whether Defendants present a

factual or facial challenge to the amended complaint, as that impacts the standard of review.[9]
*See id.* at 357 ("A district court has to first determine, however, whether a Rule 12(b)(1) motion
presents a facial attack or a factual attack . . . because that distinction determines how the
pleading must be reviewed."); *H&H Disposal Servs., Inc. v. U.S. Envtl. Prot. Agency*, Civil
Action No. 18-4467, 2019 WL 3777609, at *3 (E.D. Pa. Aug. 12, 2019) (same). Although
Defendants do not describe their attack as facial or factual, we construe their argument as a facial
attack because they present a legal dispute as opposed to a factual one. *See Constitution Party of
Pa.*, 757 F.3d at 358 ("A factual attack requires a factual dispute, and there is none here.").

When Defendants present a facial attack on a 12(b)(1) motion, courts in this Circuit
"apply the same standard as on a review of a Rule 12(b)(6) motion for failure to state a claim."
*Kemerer v. Hilliard*, 2:18-cv-374, 2018 WL 3448153, at *2 (W.D. Pa. July 17, 2018); *see also
Constitution Party of Pa.*, 757 F.3d at 358 ("[A] facial attack calls for a district court to apply the
same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6),
i.e., construing the alleged facts in favor of the nonmoving party."); *Petruska v. Gannon Univ.*,
462 F.3d 294, 302 n.3 (3d Cir. 2006) ("When considering a facial attack, the Court must consider
the allegations of the complaint as true, and in that respect such a Rule 12(b)(1) motion is similar
to a Rule 12(b)(6) motion."); *H&H Disposal Servs.*, 2019 WL 3777609, at *3 ("In deciding a

---

[9] The Third Circuit has "repeatedly cautioned" against conflating a subject matter jurisdiction challenge
under Rule 12(b)(1) with a merits-based challenge under Rule 12(b)(6). *Davis v. Wells Fargo*, 824 F.3d
333, 348 (3d Cir. 2016). "The Supreme Court has authorized courts to dismiss under Rule 12(b)(1) for
lack of jurisdiction due to merits-related defects in only narrow categories of cases." *Id.* at 349–50. "A
suit may be sometimes dismissed for want of jurisdiction where the alleged claim under the Constitution
or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining
jurisdiction or where such a claim is wholly insubstantial.'" *Bell v. Hood*, 327 U.S. 679, 682–83 (1946).
"Dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably
false, but only because the right claimed is so insubstantial, implausible, foreclosed by prior decisions of
this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Davis*, 824
F.3d at 350 (cleaned up).

facial attack, district courts apply the same standard of review [they] would use in considering a motion to dismiss under . . . Rule 12(b)(6).")  Thus, we consider "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Constitution Party of Pa.*, 757 F.3d at 358; *see also Myers v. Caliber Home Loans, Seterus, Inc.*, 1:19-cv-596, 2019 WL 4393377, at *3 (M.D. Pa. Sept. 13, 2019).

       2.  <u>Analysis</u>

In this case, Ms. Kostin's federal claims are not wholly immaterial or frivolous to warrant a dismissal for lack of subject jurisdiction for merits-related defects.

For the reasons discussed *infra*, Section II.B.2, the Court finds that Ms. Kostin has stated a procedural due process claim and a free speech retaliation claim.  As such, two of Ms. Kostins's claims arise under federal law.  Accordingly, Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

     **B.**    ***Failure to State a Claim Under Rule 12(b)(6)***

       1.  <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, courts "must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or

a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted). "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (quotation marks omitted and alterations accepted). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

"While a plaintiff's factual allegations must be enough to raise a right to relief above a speculative level, complaints filed *pro se* must be liberally construed." *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015) (cleaned up); *see also Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) (noting that although "[a] complaint by a pro se litigant is to be liberally construed," "pro se litigants still must allege sufficient facts in their complaint to support a claim" (cleaned up)); *Strader*, 2018 WL 741425, at *5 n.8 (W.D. Pa. Feb. 7, 2018) ("It is true that pro se plaintiffs are not held to the same standard as lawyers when the Court analyzes formal pleadings, but any pleading must still contain sufficient factual allegations that, when accepted as true, state a claim to relief that is plausible on its face." (cleaned up)).

2.  Analysis

a.  *Constitutional Claims*

Ms. Kostin asserts procedural due process, substantive due process, free speech retaliation, and equal protection claims against Defendants, alleging violations of the First, Fifth, and Fourteenth Amendments.[10]  (Doc. No. 9.)  We address each claim in turn.

**i.   Procedural Due Process**

Ms. Kostin brings a procedural due process claim, alleging that she was denied "her Property Interest in her Nursing Education" and an opportunity to be heard.  (*See, e.g.*, Doc. No. 9 at ¶¶ 30, 55, 82.)  Defendants move to dismiss this claim, arguing that "Plaintiff has woefully failed to allege that Defendants deprived her of a constitutionally protected interest, or that she was deprived of such interest without due process."  (Doc. No. 11 at 7.)  The Court disagrees.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or process without due process of law."  U.S. Const. amend. XIV.  "To prevail on a procedural process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."  *Elansari v. United States*, 823 F. App'x 107, 112 (3d Cir. 2020) (quoting *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008)).  "The essence of a procedural due process claim, of course, is notice and an opportunity to be heard."  *Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015).

---

[10] Although Ms. Kostin does not explicitly reference 42 U.S.C. § 1983, viewing the facts in the light most favorable to her, she brings her constitutional claims under § 1983.  *See Cohn v. Pa. State Univ.*, Civil Action No. 19-2857, 2020 WL 738496, at *4 (E.D. Pa. Feb. 12, 2020) (explaining that pro se pleadings "must be liberally construed" and that courts must "apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name" (cleaned up)); *see also Guiseppe v. McFadden*, Civil Action No. 17-4880, 2018 WL 1251734, at *5 (E.D. Pa. Mar. 12, 2018) ("Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." (cleaned up)).

As a threshold matter, the Court finds that Ms. Kostin had a property interest in her continued education in BCCC's Nursing Program. *See, e.g.*, *Simms v. Pa. State Univ.—Altoona*, Case No. 3:17-cv-201, 2018 WL 1413098, at *4 (W.D. Pa. Mar. 20, 2018) ("Courts in the Third Circuit have held that undergraduate and graduate students have a legally protected property interest in continuing their educations.  Accordingly, the Court finds that Simms' [sic] has a legally protected property interest in continuing her education."); *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 402 (M.D. Pa. 2013) ("Courts in the Third Circuit have repeatedly recognized that a graduate student has a property interest protected by procedural due process in the continuation of his or her studies . . . Consistent with this  authority, [the plaintiff] had a property interest in her continued participation in the Nurse Anesthesia Program."); *Abernathy v. Indiana Univ. of Pa.*, Civil Action No. 2:12-cv-1119, 2013 WL 3200519, at *1 (W.D. Pa. June 18, 2013) ("In multiple instances courts in this Circuit have held, or at least assumed, that students of state institutions have a property interest in that higher education that is protected by minimum standards of the Fourteenth Amendment due process.") (collecting cases).  And Ms. Kostin plausibly alleges that BCCC deprived her of that property interest when it dismissed her from the Nursing Program.

Next, the Court must consider whether the deprivation occurred without due process of law.  To do so, however, the Court must first determine whether Ms. Kostin's dismissal from the Nursing Program was academic or disciplinary in nature "because the distinction has implications for the process due before a student can be [dismissed]."  *Valentine v. Lock Haven Univ. of Pa. of the State Sys. of Higher Ed.*, No. 4:13-cv-00523, 2014 WL 3508257, at *7 (M.D. Pa. July 14, 2014); *see also Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86, 90 (1978) (explaining that there are "far less stringent procedural requirements in the case of an

academic dismissal" and noting that "the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking"). "When a student is discharged for academic, as opposed to disciplinary, reasons, all that is required to satisfy procedural due process is 'an informal faculty evaluation with the student.'"  *Kadakia*, 633 F. App'x at 88; *see also Manning v. Temple Univ.*, 157 F. App'x 509, 515 (3d Cir. 2005) (same). In contrast, a student dismissed for disciplinary reasons is entitled to more process.  For example, when a student is faced with temporary suspension, "procedural due process requires [the] school authorities to provide [the student] . . . with 'rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school,'" which would include "'notice of the charges,' 'an explanation of the evidence' against the student, and 'an opportunity [for the student] to present his side of the story.'"  *Osei v. Temple Univ.*, 518 F. App'x 86, 88 (3d Cir. 2013) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).  At bottom, "what is required of due process is generally a function of:  (1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used' and 'the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"  *Osei*, 518 F. App'x at 88 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Ms. Kostin does not specify whether she was dismissed for academic or disciplinary reasons.  However, viewing the allegations in the amended complaint in the light most favorable to her, the Court concludes that Ms. Kostin adequately pleads that she was dismissed from BCCC's Nursing Program for disciplinary, non-academic reasons without sufficient process.

She does not allege that she was dismissed due to poor grades but rather for lying and violating the nursing Integrity Policy.  (*See, e.g.*, Doc. No. 9 at ¶ 51; Doc. No. 9-2 at 8 (Ex. 6A); *see also id.* at 9 (Ex. 6B) (dismissal letter, noting that Ms. Kostin "will receive a formal disciplinary action through the College's tracking system")).  Based on the allegations in the amended complaint, Ms. Kostin first received notice of the charges levied against her *during* the meeting in which she was dismissed and was handed a pre-written dismissal letter.  (*See* Doc. No. 9 at ¶¶ 30–32.)  And, most significantly, Ms. Kostin pleads that she did not have an opportunity to tell "her side of the story."  (*See* Doc. No. 9 at ¶ 30 ("It seemed to Plaintiff that the meeting was a mere formality, as there was no opportunity for Plaintiff to describe what happened on February 13, 2019, or present her side of the story.").)  *See Abernathy*, 2013 WL 3200519, at *2 (denying motion to dismiss procedural due process claim and finding that the plaintiff plausibly alleged that he was deprived of his continuing education without "a meaningful opportunity to be heard," where the plaintiff "allege[d] that the only opportunity he had to respond to the charges against him was in the form of an 'appeal letter,'[11] with no other chance to be heard").  *Contra Osei*, 518 F. App'x at 89 ("*Goss* requires that a student receive notice of the charges and an opportunity to explain his side of the story.  There is no allegation that Osei was denied the opportunity to challenge the witnesses' testimony or was unable to explain his side of any allegations against him.").  Therefore, Ms. Kostin plausibly alleges that she did not receive adequate notice or an opportunity to be heard.

Further, even if the dismissal were for academic reasons, Ms. Kostin has also sufficiently

---

[11] Likewise, the Court finds Defendants' argument that Ms. Kostin fails to state a procedural due process claim because "there is no allegation that [she] was precluded from being able to pursue her appellate rights administratively" is unavailing at this stage of the litigation.  (See Doc. No. 11 at 7.)  *See, e.g.*, *Abernathy*, 2013 WL 3200519, at *2; *Valentine*, 2014 WL 3508257, at *7 ("[T]he University's appeals process is no substitute for adequate pre-dismissal procedures.").

pleaded that she was not given due process, "as the facts as alleged by [Ms. Kostin] sufficiently state that she was denied an informal faculty evaluation before she was [dismissed]." *See Borrell*, 955 F. Supp. 2d at 403.

For these reasons, the Court denies Defendants' motion to dismiss Ms. Kostin's procedural due process claim as against Defendants BCCC and Dr. Corrigan.[12]

### ii.    Substantive Due Process

Ms. Kostin alleges that Defendants denied her of substantive due process when they dismissed her and asserts that she had a fundamental right to a nursing education.  (Doc. No. 9 at ¶ 81 ("All Defendants, acting under Color of Law, deprived Plaintiff of her Fundamental Rights guaranteed by the Constitution . . . , including her Liberty Interest in her Nursing Education").)

"Not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (cleaned up).  "Rather, to state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest." *Id.* (cleaned up).  "[W]hether a certain property interest embodies this 'particular quality' . . . depends on whether that interest is 'fundamental' under the United States Constitution." *Id.*   Ultimately, "[t]o prevail on a substantive due process claim, a plaintiff must show that she was deprived of a fundamental right through an arbitrary and deliberate abuse of authority." *Elansari*, 82 F.3d at 112.

The Court finds that Ms. Kostin has failed to allege that there is a fundamental right to continued enrollment in the Nursing Program.  *See Simms*, 2018 WL 1413098, at *9 ("Simms

---

[12] The Court notes that Ms. Kostin fails to allege that Professor Dura had any involvement in the decision to dismiss her.  For that matter, Ms. Kostin explicitly avers that Professor Dura was not present at the meeting in which she was dismissed.  (Doc. No. 9 at ¶ 29.)  Because Ms. Kostin does not allege that Professor Dura was involved in the deprivation of her property interest, the procedural due process claim must be dismissed as to Defendant Dura.

failed to state a substantive due process claim.  Simms' interest in pursuing her college education differs greatly from the rights in which federal courts have found to be fundamental in the Constitutional sense.  Simms did not cite of a single case establishing that students have a fundamental right to a college education, and this Court is aware of none."); *Norris v. Montgomery Cty. Cmty. Coll.*, Civil Action No. 15-4741, 2016 WL 2646733, at *4 (E.D. Pa. May 9, 2016) ("[G]iven the Supreme Court's reluctance to expand the concept of due process and that the Third Circuit has so far limited non-legislative substantive due process review to cases involving real property ownership, the Court holds that there is no fundamental right to continued college enrollment.  Plaintiff has therefore failed to state a claim for violation of substantive due process." (cleaned up)); *see also Collick v. William Paterson Univ.*, Civ. No. 16-471 (KM) (JBC), 2016 WL 6824374, at *16–17 (D.N.J. Nov. 17, 2016), *aff'd in part & remanded in part on other grounds*, 699 F. App'x 129 (granting motion to dismiss substantive due process claim and finding that there is no fundamental right to an education, where the plaintiffs were expelled); *Valentine*, 2014 WL 3508257, at *5–6 (granting motion to dismiss substantive due process claims and rejecting the plaintiff's position that substantive due process protection applied to her property interest in "tuition payments and education opportunity").[13]

Accordingly, the Court grants Defendants' motion to dismiss Ms. Kostin's substantive due process claim.

---

[13] *Accord Mauriello v. Univ. of Med. & Dentistry*, 781 F.2d 46, 52 (3d Cir. 1986) (expressing "doubt about the existence" of a substantive due process right in continued enrollment in university's graduate program); *Kadakia*, 633 F. App'x at 87 ("Kadakia provides no principled basis to assuage this Court's 'doubt,' in *Mauriello*'s word, as to the existence of a substantive due process right" in continued enrollment in a graduate program).

### iii.    Free Speech Retaliation[14]

Next, Ms. Kostin asserts a free speech retaliation claim under the First Amendment,

alleging that "she was dismissed from the BCCC Nursing Program in Retaliation for exercising

her Constitutionally Protected Right to complain about the abusive treatment she had received

from Professor Dura."  (Doc. No. 9 at ¶ 82.)

To state First Amendment retaliation claim, a plaintiff must show that (1) she "engaged

in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to

deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link

existed between the constitutionally protected conduct and the retaliatory action."  *Baloga v.

Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (cleaned up); *see also Ambrose v. Del.

State Univ.*, Civil Action No. 21-416, 2021 WL 3568373, at *5 (D. Del. Aug. 12, 2021).

First, the Court finds that Ms. Kostin pleads that she engaged in constitutionally protected

activity when she complained about Professor Dura's treatment of her.  *See Ambrose*, 2021 WL

3568373, at *6 ("Ms. Ambrose alleges she complained to various University Officials about the

mistreatment she received from Dr. Kong and Coach Thornton . . . We find her speech protected

under the First Amendment, and we find she pleads the first element of retaliation.").

Second, Ms. Kostin pleads that BCCC and Dr. Corrigan[15] retaliated against her for

---

[14] Although Defendants state that they move to dismiss *all* federal claims, they do not address the free
speech retaliation claim in any detail.  (*See* Doc. No. 11 at 6–8 (addressing only the equal protection,
procedural due process, and substantive due process claims, with the only reference to free speech
retaliation being in passing with respect to Ms. Kostin's failure to plead an equal protection violation).)
This provides us another basis to deny their motion to dismiss this claim, as to Defendants BCCC and Dr.
Corrigan.

[15] *See* supra n.12.  Ms. Kostin fails to allege that Professor Dura had any involvement in the decision to
dismiss her (the alleged retaliatory action) or that Professor Dura was even aware that Ms. Kostin had
complained about her (the alleged protected activity).  Thus, the Court grants the motion to dismiss the
free speech retaliation claim against Professor Dura.

complaining when they dismissed her from the Nursing Program shortly after she complained. (*See, e.g.*, Doc. No. 9 at ¶¶ 44, 92.)  "A retaliatory action must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  *Ambrose*, 2021 WL 3568373, at *6 (cleaned up).  Dismissal from an educational institution would deter a person of ordinary firmness from exercising her constitutional rights.  *Cf. id.* at *8 ("Receiving a failing grade resulting in the loss of an athletic scholarship . . . would deter a student of ordinary firmness from speaking out about alleged professor misconduct.").

Third, Ms. Kostin has alleged sufficient facts from which the Court can infer causation. To establish a causal link, a plaintiff must show that there is (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  *Eck v. Oley Valley Sch. Dist.*, 431 F. Supp. 3d 607, 623 (E.D. Pa. 2019).  "'Unusually suggestive' temporal proximity means within a few days but no longer than a month."  *Id.* (cleaned up).  Ms. Kostin pleads that she complained on February 17 and received her letter of dismissal on February 21.  (Doc. No. 9 at ¶¶ 25–26, 31–32.)  The Court finds this four-day time frame to be unusually suggestive and therefore, at this stage, Ms. Kostin has satisfied her burden of pleading causation.

In sum, the Court grants the motion to dismiss Ms. Kostin's free speech retaliation claim only as to Professor Dura, and denies the motion to dismiss this claim as to BCCC and Dr. Corrigan.

### iv.    Equal Protection

Last, Ms. Kostin brings an equal protection claim under the Fourteenth Amendment, alleging that she "was deprived of her Guaranteed Right to Equal Protection of the Laws, because she was treated differently than other students, because of her Asian Ethnicity."  (Doc. No. 9 at ¶ 82.)

Under the Equal Protection Clause of the Fourteenth Amendment, a state shall not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV. "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest."  *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005).

Here, Ms. Kostin appears to proceed under the first theory, alleging that "she was treated differently than other students, because of her Asian ethnicity."  (Doc. No. 9 at ¶ 82.)  But Ms. Kostin fails to plead *any* facts to support this conclusory legal assertion and therefore her equal protection claim must be dismissed.  *See, e.g.*, *Park v. Temple Univ.*, Civil Action No. 16-5025, 2017 WL 368087, at *4 (E.D. Pa. Jan. 25, 2017) (dismissing the plaintiff's equal protection claim where he alleged "he was subjected to disparate treatment because of his status as an Asian American and naturalized citizen," because the claim "contain[ed] little more than bare recitals of legal elements" and the complaint was "devoid of facts that would tend to support an inference that Plaintiff's expulsion had anything to do with his status as a member of a protected class"); *see also Raven v. City of Philadelphia*, Civil Action No. 15-446, 2017 WL 930316, at *4 (E.D. Pa. Mar. 8, 2017) (dismissing equal protection claim because the "general assertion that the Board of Pensions and Retirement did not subject similarly situated white police officers to the same treatment as [the plaintiff, who is African American] with regard to their Service Connected Disability Pensions is a 'conclusory statement'").

Thus, the Court grants Defendants' motion to dismiss the equal protection claim.

### b.   State Law Claims

The Court now considers whether Ms. Kostin's state law claims against Defendants for

negligence, IIED, and breach of contract may proceed.

### i.   Defenses: Governmental Immunity

Defendants argue that Ms. Kostin's state law claims must be dismissed because

Defendants have governmental immunity under the PSTCA.[16]

Under Section 8541 of the PSTCA, "no local agency shall be liable for any damages on

account of any injury to a person or property caused by an act of the local agency or an employee

thereof."  42 Pa. Stat. & Cons. Ann. § 8541.  However, "[a] local agency or its employees may

be liable for claims of negligence that fall into one of the nine enumerated exceptions under

Section 8542(b) of the Tort Claims Act."  *James v. Cmty. Coll. of Allegheny Cty.*, No. 1303 C.D.

2019, 2021 WL 3701746, at *3 (Pa. Cmw. Ct. Aug. 20, 2021).  Negligent acts do not include

"acts or conduct which constitute[] a crime, actual fraud, actual malice or willful misconduct."

---

[16] Defendants also contend that Ms. Kostin's state law claims are barred by the statute of limitations.
(Doc. No. 11 at 11.)  This strikes the Court as disingenuous, given that the Court already addressed this
argument during a telephone conference held on May 19, 2021 (Doc. No. 7).  The Court explained the
restrictions regarding in-person staffing in the Clerk of Court's Office due to the COVID-19 pandemic
and stated the Court would not penalize Ms. Kostin for the Clerk's office's two-day docketing delay (*see*
Doc. No. 1 (complaint dated February 19, 2021 but docketed on February 22, 2021)).

Further, Defendants argue that Ms. Kostin's state law claims must be dismissed because she failed to
exhaust administrative remedies.  (Doc. No. 11 at 10–11.)  Defendants assert:  "At present, Plaintiff
alleges that she was dismissed from the BCCC Nursing Program pursuant to the BCCC Nursing Student
Handbook.  She further alleges that BCCC didn't follow its own internal policies and Handbook Policy.
However, Plaintiff also fails to allege that she followed the Policy outlined with the Handbook and her
own Exhibits.  As such, Plaintiff failed to exhaust her available administrative remedies to challenge the
allegedly incorrect dismissal action."  (*Id.* at 11.)  Notably, Defendants fail to cite to any analogous case
law to support their position.  But, even so, the Court finds that, at this stage, viewing the facts in the light
most favorable to Ms. Kostin, she has pled that she exhausted her administrative remedies.  Ms. Kostin
alleges that she appealed to the Provost and the President's Office.  (Doc. No. 9 at ¶ 52.)  Further, the
dismissal letter Ms. Kostin received states, "Should you wish to challenge this decision, you may contact
the Associate Provost, Dr. Kelleway to begin a grievance process."  (Doc. No. 9-2 at 9 (Ex. 6B).)
Therefore, Defendants' emphasis on the grievance policy is inapposite, since contacting the Associate
Provost is not listed as an option in grievance policy.  (*See* Doc. No. 11-1 (describing the multi-step
the grievance process, beginning with speaking to the involved faculty member—here, Professor Dura or
Dr. Corrigan—and ending with being referred to the appropriate college wide committee or the Provost of
Academic Affairs).)  By not directing Ms. Kostin to the official grievance policy, Defendants arguably
waived their ability to rely on that process.

42 Pa. Stat. & Cons. Ann. § 8542(a)(2).

Accordingly, to impose liability on a local agency, a plaintiff must satisfy three statutory requirements. *Johnson v. City of Philadelphia*, Civil Action No. 19-1591-KSM, 2020 WL 2933853, at *5 (E.D. Pa. June 3, 2020). First, the plaintiff must "demonstrate that at common law or by statute one not having an immunity defense available could be held liable for the same harm alleged against the agency." *Mascaro v. Youth Study Ctr.*, 523 A.2d 118, 1121 (Pa. 1987). Second, she must establish that her injury "was caused by the negligent acts of the agency or an employee acting within the scope of his office or duties, excluding acts of crimes, fraud, malice or willful misconduct." *Id.* Third, the plaintiff must show that the local agency's actions fall into one of the nine exceptions set forth in § 8542(b). *See* 42 Pa. Stat. & Cons. Ann. § 8542(a); *see also Johnson*, 2020 WL 2933853, at *5. These exceptions include vehicle liability; care, custody or control of personal property; real property; trees, traffic controls, and street lighting; utility service facilities; streets; sidewalks; care, custody or control of animals; and sexual abuse. 42 Pa. Stat & Cons. Ann. § 8542(b)(1)–(9).

Courts have held that community colleges fall within the ambit of a "local agency" for governmental immunity purposes. *See James*, 2021 WL 3701746, at *3 (finding that the Community College of Allegheny County was "a local agency for the purpose of governmental immunity"); *Cmty. Coll. of Allegheny Cty. v. Seibert*, 601 A.2d 1348, 1352 (Pa. Cmw. Ct. 1992), *aff'd*, 533 Pa. 314 (1993) ("conclud[ing] that a community college is a local agency for the purpose of governmental immunity"); se*e also D.P. Enters., Inc. v. Bucks Cty. Cmty. Coll.*, 725 F.2d 943, 944–45 (3d Cir. 1984) (affirming the district court's dismissal of the complaint because the action was barred by the PSTCA since BCCC had governmental immunity). Thus, BCCC is a local agency for the purposes of governmental immunity.

Defendants appears to argue that the PSTCA grants them governmental immunity for *all* of Ms. Kostin's state law claims.  However, the PSTCA applies only to *tort* claims and cannot shield Defendants from liability for Ms. Kostin's *breach of contract* claim.[17]  *See Edison Learning, Inc. v. Sch. Dist. of Phila.*, 56 F. Supp. 3d 674, 680 (E.D. Pa. 2014) ("As the name suggests, the PSTCA applies solely to tort claims, not breach of contract claims."); *see also Meyer v. Cmty. Coll. of Beaver Cty.*, 2 A.3d 499, 502–03 (Pa. 2010) ("In line with the extant understanding of the [PSTCA], we believe the Legislature centered the immunity there conferred on 'injury to a person or property' as a reflection of traditional tort jurisprudence . . . We hold that governmental immunity does not extend to all statutory causes of action, regardless of whether they sound in tort or contract."); *McShea v. City of Philadelphia*, 995 A.3d 334, 340–41 (Pa. 2010) ("In Count III, we find none of the necessary elements of a contract action . . . What is present is a tort allegation . . . The clear intent of the Tort Claims Act was to insulate government from exposure to tort liability.").

Turning to Ms. Kostin's IIED claim, the Court notes that the thrust of Ms. Kostin's amended complaint is that Defendants acted intentionally and engaged in willful misconduct. (*See, e.g.*, Doc. No. 9 at ¶ 84 (seeking punitive damages and alleging that Defendants' "Acts were Intentional, Reckless and Malicious"); *id.* at ¶¶ 24, 50 (claiming that Defendants "intentionally concealed" her nursing notes, which "contained information on her work performance on the Clinical Date in question"); *id.* at ¶ 58 (alleging that Defendants "abus[ed] their authority to intimidate the Plaintiff" and "fabricated a nonexistent Incident Report to protect their staff and justify their dismissal decision"); *id.* at ¶ 78 (alleging that Defendants

---

[17] In so ruling, the Court notes that Ms. Kostin is not attempting to avoid the PSTCA by couching a claim for tort damages under a breach of contract theory.

"intentionally or recklessly" caused her emotional distress).)  Accordingly, the Court concludes

that BCCC is entitled to governmental immunity for the IIED claim, since it is an intentional tort.

*See, e.g.*, *Tuiz-Rivera v. City & County of Lancaster*, Civil Action No. 21-2105, 2021 WL

4145054, at *9 (E.D. Pa. Sept. 9, 2021) ("Ruiz-Rivera's causes of action for assault, battery, and

trespass are intentional torts and based on allegations of willful conduct.  As such, the City of

Lancaster is immune from suit for these claims under the PSTCA."); *McCowan v. City of*

*Philadelphia*, Civil Action No. 19-3326-KSM, 2021 WL 84013, at *31 (E.D. Pa. Jan. 11, 2021)

(finding that the City of Philadelphia was immune under the PSTCA for intentional torts and

granting motion to dismiss IIED claim); *Keefer v. Durkos*, No. CIV A 304-187, 2006 WL

2773427, at *20 (W.D. Pa. Sept. 25, 2006) ("It is clear from a reading of this governmental

immunity statute that a local agency is not liable for intentional torts of its agents and/or

employees.").

However, this immunity does not extend to the individual Defendants, Professor Dura

and Dr. Corrigan.  "Agency employees are generally immune from liability under the PSTCA for

acts committed within the scope of their employment." *Tucker v. Sch. Dist. of Phila.*, Civil

Action No. 19-889, 2019 WL 3802066, at *5 (E.D. Pa. Aug. 13, 2019) (citation omitted); *see*

*also* 42 Pa. Stat. & Cons. Ann. § 8545 ("An employee of a local agency is liable for civil

damages on account of any injury to a person or property caused by the acts of the employee

which are within the scope of his office or duties only to the same extent as his employing local

agency and subject to the limitations imposed by this subchapter.").  "Immunity does not extend,

however, to acts which constitute 'a crime, actual fraud, actual malice or willful misconduct.'"

*Tucker*, 2019 WL 3802066, at *5 (quoting 42 Pa. Stat. & Cons. Ann. § 8550); see also

*McCowan*, 2021 WL 84013, at *31 n.25 (noting that "immunity is waived when a plaintiff

alleges that the employee's actions amounted to willful misconduct").  "Essentially, willful misconduct is synonymous with the term intentional tort."  *Tucker*, 2019 WL 3802066, at *5 (cleaned up); *McCowan*, 2021 WL 84013, at *31 n.25 ("By the very nature of the tort of IIED, it is a claim of willful misconduct." (cleaned up)).  Accordingly, the Court finds that the individual Defendants are not entitled to immunity for the IIED claim.  *See McCowan*, 2021 WL 84013, at *31 n.25 (rejecting the former Police Commissioner's claim for governmental immunity and allowing the plaintiff's IIED claim to go forward as against him).

That leaves the negligence claim.  Here, Ms. Kostin argues that the second exception applies:  that BCCC had care, custody, and control of her personal property, i.e., her property interest in her nursing education.  (Doc. No. 12 at 3.)  Viewing the facts in the light most favorable to Ms. Kostin, Ms. Kostin has adequately alleged, at this stage of the litigation, that the personal property exception applies, and therefore Defendants are not entitled to governmental immunity.

In sum, the Court finds that Defendants are not entitled to governmental immunity as to the breach of contract claim or the negligence claim.  And BCCC is entitled to governmental immunity for the IIED claim, but Defendants Corrigan and Dura are not.

\* \* \*

Notwithstanding our governmental immunity ruling above, the Court finds that Ms. Kostin's state law claims must nevertheless be dismissed, as they do not withstand a Rule 12(b)(6) analysis.

### ii.    Negligence

"To establish negligence under Pennsylvania law, a plaintiff must show that '(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or

damage.'" *Turturro v. United States*, 629 F. App'x 313, 320 (3d Cir. 2015) (quoting *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011)).  In her amended complaint, Ms. Kostin pleads that Defendants owed her "distinct Duties of Care," that they "breached those Distinct Duties of Care to Plaintiff by failing to conform to applicable standards of conduct required by Pennsylvania law," and that there was "a direct causal connection between those individual and collective breaches of Duty and the damages suffered by Plaintiff."  (*See* Doc. No. 9 at ¶ 76.) These are conclusory legal assertions and do not suffice to withstand a motion to dismiss. *Ashcroft*, 556 U.S. at 678 (explaining that "threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice"); *Lapensohn v. Hudson City Sav. Bank*, Civil Action No. 19-4576-KSM, 2021 WL 1581402, at *14 (E.D. Pa. Apr. 21, 2021) ("Here, the Lapensohns state in [a] conclusory fashion that 'Defendants failed to conform to the required standard of conduct owed to Plaintiffs,' that they 'suffered substantial damages,' and that the 'conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiffs.'  The Court cannot consider these conclusory legal assertions in deciding whether the amended complaint states a plausible claim for negligence.").  Ms. Kostin fails to plead *what* duty Defendants owed her and *how* they breached that duty.  *See, e.g.*, *Bertinelli v. Transcontinental Gas Pipe Line Co., LLC*, No. 3:20-CV-01558, 2020 WL 7260993, at *3 (M.D. Pa. Dec. 10, 2020) ("Plaintiff cannot simply allege there was a breach without explaining how this happened . . . Without pleading such additional facts showing how Defendant's behavior fell below the standard of care owed to Plaintiffs, this claim cannot survive."); *Lapensohn*, 2021 WL 1581402, at *14 ("Because the Lapensohn's have not adequately pled that M&T Bank owed them a duty of care [or] the nature of that duty . . . their negligence claims fail.").  For these reasons, Ms. Kostin's negligence claim does not state a

claim.

### iii.   IIED

"To state a claim for IIED, a plaintiff must show extreme and outrageous conduct that is deliberate or reckless and causes severe emotional distress." *Fugarino v. Univ. Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000) (citations omitted).  The Pennsylvania Supreme Court has characterized IIED as a "most limited" tort.  *See Hoy v. Angelone*, 720 A.2d 745, 755 (Pa. 1998). A plaintiff may recover for IIED only where the alleged conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Dart v. County of Lebanon*, Civ. No. 13-CV-02930, 2014 WL 4792135, at *11 (M.D. Pa. Sept. 23, 2014 (cleaned up); *see also Reedy v. Evanson*, 615 F.3d 197, 231–32 (3d Cir. 2010); *Fugarino*, 123 F. Supp. 2d at 844.  "To be sure, the bar to show IIED is high.  Conduct may rightly be characterized as bullying, abusive, improper, and highly offensive and yet still not be extreme or outrageous enough to allow for recovery on an IIED claim." *Schaffhouser v. Transedge Truck Ctrs.*, Civil Action No. 19-5811-KSM, 2020 WL 2847935, at *6 (E.D. Pa. June 2, 2020).

Although unfortunate, Defendants' actions towards Ms. Kostin, in dismissing her from the Nursing Program and allegedly failing to adequately investigate her grievance, do not rise to the level of extreme or outrageous conduct.  *Cf. Ellis v. Genesis Healthcare Corp.*, Civil Action NO. 18-5536, 2019 WL 1303981, at *4 (E.D. Pa. Mar. 20, 2019) ("Plaintiff alleges that her firing was racially discriminatory and, as such, constituted outrageous conduct.  However, courts applying Pennsylvania law have repeatedly found that allegations of race discrimination, even when coupled with retaliatory conduct, do not meet the extreme and outrageous conduct standard necessary to state a claim for IIED.  That is the case even when racial discrimination results in termination." (cleaned up)).  Therefore, the Court dismisses the IIED claim against all

31

Defendants.

### iv. Breach of Contract

"To support a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damage." *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572 (Pa. Super. Ct. 2003).

Ms. Kostin fails to explicitly identify which documents make up the contract between herself and BCCC. (*See generally* Doc. No. 9.) Indeed, she only pleads, in a conclusory fashion, the elements of a breach of contract claim. (*See* Doc. No. 9 at ¶ 80 ("A contract existed between Plaintiff and Defendants; Defendants all breached their duties to Plaintiff under the terms of their contracts with Plaintiff; and Plaintiff was severely damaged as a result of those breaches, including the loss of her earning power as a Registered Nurse over thirty future years of work[.]"). Ms. Kostin does, however, reference violations of the BCCC Nursing Student Handbook and, liberally construed, the complaint alleges that that Defendants breached the Nursing Student Handbook. (*See, e.g.*, Doc. No. 9 at ¶¶ 33, 36, 43–44, 47–48; *see also, e.g.*, Doc. No. 9-2 at 13 (Ex. 10); *id.* at 16–19 (Exs. 13–16); *id.* at 23 (Ex. 18).)

But a breach of contract claim based on a student handbook must fail as a matter of law where, as here, the Defendant is a public higher educational institution. Indeed, "[c]ourts in Pennsylvania have 'declined to construe the student handbook of a public university as a contract between the public university and the student.'" *See Cohn*, 2020 WL 738496, at *9 (quoting *Tran v. State Sys. of Higher Ed.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009)) (collecting cases); *see also id.* ("Because [the plaintiff's] breach of contract claim is based on a public university's alleged breach of its student handbook and policy provisions, her breach of contract claim similarly fails under case law."); *Satell v. Temple Univ.*, Civil Action No. 17-2774, 2017 WL 3158761, at *3 (E.D. Pa. July 25, 2017) ("[The plaintiff] alleges he contracted with the

University under the terms of the Department of Psychology Graduate Handbook, and the allegations of breach refer to terms in the Handbook.  Because Pennsylvania does not recognize the University's student handbook as a contract, [the plaintiff] does not allege the existence of a contract and we must dismiss this claim."); *Borrell*, 955 F. Supp. 2d at 408 (dismissing breach of contract claim against public university because the student handbook "did not establish a contractual relationship," such that the plaintiff "fail[ed] to state a necessary element of her breach of contract claim:  the existence of a contract").  Therefore, the Court grants Defendants' motion to dismiss Ms. Kostin's breach of contract claim.

## IV.   Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  Ms. Kostin's procedural due process claim and free speech retaliation claim may proceed against Defendants BCCC and Dr. Corrigan, but they are dismissed without prejudice and with leave to amend as to Defendant Dura.  Ms. Kostin's substantive due process claim is dismissed with prejudice and without leave to amend.  *See Simms*, 2018 WL 1413098, at *9 ("The Court finds that leave to amend would be futile with respect to Simms' substantive due process claim because the Third Circuit does not recognize a fundamental right to higher education.  Accordingly, the Court will deny Simms leave to amend her substantive due process claim."); *see also id.* ("If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015)).  Ms. Kostin's equal protection, negligence, and breach of contract claims are dismissed without prejudice and with leave to amend.  *See* Fed. R. Civ. P. 15(a) ("The Court should freely give leave [to amend] when justice so requires.").  Ms. Kostin's IIED claim is dismissed with

prejudice as to Defendant BCCC but without prejudice and with leave to amend as to Defendants Dura and Corrigan.

An appropriate Order follows.